AUDREY ESTERDAHL, appellant, v. ROBERT D. WILSON, appellee. DONOVAN J. ESTERDAHL, appellant, v. ROBERT D. WILSON, appellee.

No. 50339.

(Reported in 110 N.W.2d 241)

AUGUST 15, 1961.

Filseth & Schroeder, by A. Fred Berger, Jr., of Davenport, for appellants.

Kopf & Christiansen, by Clarence H. Christiansen and George A. Goebel, all of Davenport, for appellee.

THOMPSON, J.—On January 21, 1960, Audrey Esterdahl and Donovan J. Esterdahl filed separate petitions in the Scott District Court against the same defendant claiming damages arising from the same automobile accident, which occurred on February 18, 1958. The defendant being a resident of the State of Illinois, each plaintiff attempted to secure jurisdiction by serving notice of the suits under sections 321.498 to 321.505 inclusive of the Code of 1958. It is conceded that these notices complied with all the requirements of the Code sections last above referred to except that the mailing required by section 321.501(2) was by certified mail instead of by restricted certified mail. The trial court held that this was a fatal defect in each case, and sustained defendant's special appearances. After the filing of the special appearances but before the court's rulings thereon, and more than two years after the date of the occurrence of the accident upon which the actions are based, the plaintiffs again attempted to obtain jurisdiction of the defendant by serving notices under sections 321.498–321.505 inc., supra, which complied with all the requirements of said sections. Thereupon the defendant filed answers which among other defenses pleaded the statute of limitations. The plaintiffs each moved to strike this defense, and their motions were denied. From the rulings upholding the special appearances and denying the motions to strike we have this appeal, the two cases being consolidated in this court. Leave to appeal was duly granted. We shall hereinafter refer to the plaintiffs as "the plaintiff," and to all rulings likewise in the singular.

I. We have first the question of the correctness of the trial court's ruling sustaining the special appearance which denied that the plaintiff had acquired jurisdiction because the notice was sent to the defendant by certified mail instead of by restricted certified mail. At this point section 321.501 is important, and we quote it:

"Manner of service. Plaintiff in any such action shall cause the original notice of suit to be served as follows:

"1. By filing a copy of said original notice of suit with said commissioner, together with a fee of two dollars, and

"2. By mailing to the defendant, and to each of the defendants if more than one, within ten days after said filing with the commissioner, by restricted certified mail addressed to the defendant at his last known residence or place of abode, a notification of the said filing with the commissioner."

We find also that section 618.15 is significant, and we set it out:

"Service by certified mail. Wherever used in this Code, the following words shall have the meanings respectively ascribed to them unless such meanings are repugnant to the context:

"1. The words, 'certified mail' mean any form of mail service, by whatever name, provided by the United States post office where the post office provides the mailer with a receipt to prove mailing.

"2. The words, 'restricted certified mail' mean any form of certified mail as defined in subsection 1 which carries on the face thereof, in a conspicuous place where it will not be obliterated, the endorsement, 'Deliver to addressee only', and for which the post office provides the mailer with a return receipt showing the date of delivery, the place of delivery, and person to whom delivered."

It will be observed that the material distinction between "certified" mail and "restricted certified" mail is that the latter contains on the face of the container the words "Deliver to addressee only"; and a return receipt will be furnished by the post-office department showing the date of delivery and the person to whom delivered. So the legislature has provided a certain way for the defendant to obtain notice; it must reach him personally and no substitution by delivering to any other person is permitted.

In the case at bar the "certified" mail was delivered to the defendant's wife, and he received it from her shortly thereafter and within the time required for appearance. We have therefore the narrow question whether the failure to send the notice by "restricted" certified mail was such a defect as that the trial court did not acquire jurisdiction.

It is the general rule that where the method of service provided is extraordinary in character and is allowed only because specially authorized and is valid as a means of obtaining jurisdiction the statutory procedure must be strictly followed. Perhaps the leading case in Iowa on the point is Bradley Mfg. Co. v. Burrhus, 135 Iowa 324, 327, 112 N.W. 765, 766, where we said: "The method of procedure is extraordinary in character, and allowable only because specifically authorized; and, in common with other legislative acts which mark a departure from the ordinary, the provisions must be strictly construed in the sense, at least, that the operation thereof may not be abridged or extended by the courts." We quoted this with approval in Davis v. Jones, 247 Iowa 1031, 1035, 78 N.W.2d 6, 8.

To the same effect is Jermaine v. Graf, 225 Iowa 1063, 1066, 283 N.W. 428, 430. There, in answer to the contention that the Iowa Code provides that the rule that statutes in derogation of the common law are to be strictly construed has no application here, we said: "But this court has repeatedly held that statutes providing for substituted service of original notice present a method of procedure that is extraordinary in character, and allowed only because specially authorized. We have held that, such statutes being the only authority for the extraordinary procedure, to justify the procedure the facts recited in the statute must appear." Authorities are cited. Hayes v. Jansen, 89 F. Supp. 1, 3, decided in the Federal Court for the Northern District of Iowa and so following the established Iowa law, contains this statement: "* * * in determining whether or not jurisdiction has been acquired in substituted service cases of any character, a narrow and literal compliance with the statutory requirements would of necessity need be shown by a plaintiff to satisfy the statute. The fact that the Iowa Supreme Court have consistently followed this rule since and long prior to the enactment of the nonresident motorist service statutes is almost too fundamental to require citation of authorities."

Further discussion of the question seems needless, since the plaintiff in reply argument admits this was the rule in Iowa

prior to the decision of Jacobson v. Leap, 249 Iowa 1036, 88 N.W.2d 919, and State ex rel. Hanrahan v. Miller, 250 Iowa 1358, 96 N.W.2d 474. It is the thought of plaintiff's counsel that these cases have changed the rule. We do not agree.

██ ██ Both plaintiff and defendant have argued the point on the assumption that the service provided by our nonresident motorist statutes is a substituted one. Several of our cases also proceed upon this theory. Whether this is correct we do not find it necessary to decide. It is at least, and certainly, an extraordinary method of procedure. It is the thoroughly established rule that jurisdiction of the defendant in actions in personam cannot be obtained by service on him outside the state. Service by publication may be had when personal service within the state cannot be obtained, in specified cases listed in R. C. P. 60. But these are all in actions in rem. Personal service outside the state generally is equivalent to publication. R. C. P. 64. It is only in nonresident motor-vehicle damage suits that personal jurisdiction of a defendant may be had through service beyond the borders of Iowa. A special procedure is set up for this; but it must be listed as high among the "extraordinary procedures" referred to in the authorities in which a strict and literal compliance with the statutes is required. In fact, it may fairly be said to be an "extraordinarily extraordinary" procedure.

II. Three Iowa cases are cited by the plaintiff as authority for the contention that we have now relaxed the rule of strict compliance. Two of them—Jacobson v. Leap and State ex rel. Hanrahan v. Miller—we have referred to above. Neither of these is in point. They have nothing to do with the nonresident motor-vehicle service-of-notice cases. In Jacobson v. Leap, we made it clear that we were not discussing the manner of service on nonresident vehicle owners or operators when we said: "The other defendants, both foreign corporations, were served with notice as provided by section 321.501, Code of 1954." Jacobson v. Leap, 249 Iowa, loc. cit. 1038, 88 N.W.2d, loc. cit. 920. The question there involved was the contents of the notice, and our discussion was entirely to the point whether it complied sufficiently with R. C. P. 50, which defines what the notice shall

contain, in all cases. The same is true of State ex rel. Hanrahan v. Miller, supra. We were not, in either case, dealing with an "extraordinary procedure" such as the manner of service of the notice on a nonresident defendant. They applied a liberal rule to the question of contents of original notices in cases generally, but go no further.

Ransom v. Sipple Truck Lines, 240 Iowa 466, 34 N.W.2d 590, deals with a notice to a nonresident corporate defendant mailed to its president and secretary rather than to the corporation itself. We said: "The corporation was practically defunct and these were the proper persons to receive such notifications for it." (Citing authorities) Ransom v. Sipple Truck Lines, 240 Iowa, loc. cit. 470, 34 N.W.2d, loc. cit. 592. We also said: "Nor are the forms or service of the original notices themselves questioned." Ransom v. Sipple Truck Lines, 240 Iowa, loc. cit. 469, 34 N.W.2d, loc. cit. 592. We also pointed out that the original notice in each case was properly addressed to the defendant corporation, and was strictly correct in form. What we held, and all that we held, was that mail addressed to the managing officers of a defunct corporate defendant was sufficient to meet the requirements of the statute that it be addressed to the defendant.

The plaintiff cites cases from foreign jurisdictions in support of the contention that we should overlook the failure to comply strictly with the provisions of our statute as to service of notice. It is sufficient to say at this point that they were made under statutes differing materially from ours. We shall discuss some of these in a later division.

III. We have said we do not think it necessary to determine whether the procedure outlined in our statutes for service upon a nonresident defendant in these cases is in fact a "substituted" service. We have in section 321.501 the requirement that the notice be served on the defendant by restricted certified mail; and this seems to demand service upon the defendant himself. Such mail must be delivered to the addressee only. But the procedure followed here was in fact a substituted service, since the mail was delivered to one other than the addressee. Our legislature has made it clear that it

intended delivery to be made only to the defendant in person. There are many reasons for this; especially that it be certain the defendant would receive the notification. It will not do to say it is sufficient if it appears he did in fact acquire notice of the action, although by some other method. This argument would support a notice by ordinary mail, or by telegram, or word of mouth, or by reading of the suit in a newspaper. Jurisdiction must be acquired in the manner prescribed by law. This is especially true in a proceeding of such unusual type as the one under consideration here. As the Minnesota Supreme Court said in Schilling v. Odlebak, 177 Minn. 90, 94, 224 N.W. 694, 696: "There is no reason to establish or encourage loose practice in a procedure of such importance. Statutes of this character call for full, complete and substantial compliance therewith in order to sustain substituted service."

In fact, the courts have no right to depart from the statutory procedures. The statutes are clear, and in a situation so extraordinary jurisdiction can be obtained in no other way than by adhering to them as they are written.

In 5 Am. Jur., Automobiles, section 591, page 830, the rule is thus stated: "Statutes which provide for constructive or substituted service of process on nonresident motorists are in derogation of common rights and should be strictly construed, and strict compliance therewith must be observed, although provisions should not be read into such a statute which are not expressly stated or necessarily implied."

In 72 C. J. S., Process, section 43, pages 1053, 1054, is this: "In order for such service to be effective plaintiff must bring himself and his cause of action clearly within provisions authorizing it; and the statutory requirements must be followed and, under the controlling decisions, must be followed strictly, faithfully, fully, literally, or at least substantially. Any substitute service other than that authorized by the statute is ineffective."

And see 9A Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Ed., section 5914. It cannot be contended that there is no substantial difference between a service by restricted certified mail, under which the notice must be de-

livered to the addressee personally, and a service by certified mail, by which it may be delivered to another person for him.

IV. The plaintiff next urges that the statute of limitations was tolled by the first service upon the commissioner of public safety. It is evident the real contention here is that service on the commissioner gives jurisdiction; there is no other way in which the statute may be tolled. R. C. P. 49 gives the only method, other than by a sufficient service of notice, by which this may be done. It provides the statute is tolled by delivering the original notice to the sheriff of the county in which the action is brought with the intent it be forthwith served. There is no claim this was done here. ·

Two Iowa cases are cited by the plaintiff, but neither is in any manner in point. Kokenge v. Holthaus, 243 Iowa 571, 52 N.W.2d 711, holds only that the statute of limitations is not tolled by nonresidence of the defendant in the class of cases we are considering, since service may be made upon him outside the state. Platt v. Carter, 187 Iowa 777, 174 N.W. 786, decides that a temporary nonresidence of the defendant does not toll the statute during the time he is outside the state. Neither case has any relevancy to the question now before us.

Some cases from foreign jurisdictions hold, under the particular statutes involved, that service is complete when made upon the resident official named therein. In this class are Bessan v. Public Service Co-ordinated Transport, 135 Misc. 368, 237 N. Y. S. 689, and other cases decided in the lower courts of New York; and Allen v. Campbell, La. App., 141 So. 827. Under these decisions it is held apparently that service on the resident officer is sufficient to give jurisdiction; it is complete when made on that agent. The New York statute as quoted in the Bessan case, supra, loc. cit. 135 Misc. 371, 237 N. Y. S. 693, said that service on the secretary of state was to " 'be of the same legal force and validity as if served on him [the defendant] personally within the state.' "

It is only necessary to point out that our statute does not so say. As we have pointed out above, section 321.501 is definite that the plaintiff must cause the original notice to be served by 1, filing a copy with the commissioner "and" 2,

by mailing to the defendant by restricted certified mail a notification of the filing. Both 1 and 2 are definitely required as a part of the service of the original notice, and no jurisdiction can be acquired until both requirements have been met.

It is not for us to regret that we have been compelled to follow a strict and technical line in our decision set out above. The so-called technicalities of the law are not always what they seem. When they establish an orderly process of procedure, they serve a definite purpose and are more than technical; they have substance, in that they lay down definite rules which are essential in court proceedings so that those involved may know what may and may not be done, and confusion, even chaos, may be avoided. They are necessary; without them litigants would be adrift without rudder or compass. We have, and should have, no compunction in following them when they are clear and. definite.

The rulings of the trial court were correct.—Affirmed.

All JUSTICES concur.